LEAVERS ET, PLAINTIFFS, *v.* CANTON (CITY) ET, DEFENDANTS.

Common Pleas Court, Stark County.

No. 105823. Decided May 22, 1963.

*Messrs. Wilkins, Perkins, Wilkins & Milligan, Mr. Paul M. Perkins,* of counsel, for plaintiff.

*Mr. Harold E. DeHoff,* city solicitor, *Mr. Martin H. Hunker,* assistant city solicitor, *Mr. John E. Miller,* for defendant.

WEBER, J. This is an action for a declaratory judgment. The plaintiffs bring the action in behalf of themselves as members and other members of the fire department who are in the classified civil service of the city. The cause was submitted on an agreed statement of facts, to-wit, that the defendants, Wil-

liam Rosche (Chief) and Karl Wonderly (Assistant Chief) have attained the age of 65 years; that competitive examinations were held in accordance with Section 143.34.1, Revised Code, and an eligibility list was established in June, 1961; that plaintiffs are listed on said eligibility list and have thereby acquired such rights as would flow from said eligibility list under the law; that the defendants mayor and safety director have not retired said defendant members under the terms of the ordinance hereinafter set forth. The petition prays that said ordinance be found valid, and the rights of all parties be determined and vacancies declared.

The ordinance in question is Section 997 of the "Code of the City of Canton, 1950" and reads as follows:

"Section 997. Compulsory Retirement for Officers and Members of Police and Fire Departments. No officer or member of the police department and fire department of the city shall continue in such service after attaining the age of sixty-five years. Such officers and members shall and must, upon attaining the age of sixty-five years, be honorably retired by the director of public safety with the right, however, of such officers and members to pension as is provided by the rules of the board of trustees of the police and firemen's pension funds. (Ordi. No. 9646, S 1.)"

*Constitution and Statute*

Sec. 3, of Article XVIII, of the Constitution of Ohio, reads: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, *as are not in conflict with general laws.*" (All emphasis ours in this opinion.)

Section 143.27, Revised Code, reads in part as follows: "The tenure of every officer or employee in the classified service of the—cities—, holding a position—shall be during good behavior and efficient service - - -."

*Questions*

The ultimate question before this court is one of law, to-wit: Is said Section 997 a valid exercise of the legislative powers of a non-charter municipality such as Canton.

The preliminary question is: Does said ordinance conflict with Section 143.27, Revised Code?

The Supreme Court in its opinion in *Reed* v. *Youngstown*, 173 Ohio St., 265, citing *Verberg* v. *Bd. of Education*, 135 Ohio St., 246, and *State, ex rel. Daley*, v. *Toledo*, 142 Ohio St., 123, concludes that such an ordinance does so conflict, and the present court so holds.

Counsel for plaintiffs agrees that it does, but contends that since the subject of the ordinance is a matter of purely local and municipal character and concern, and since Sec. 3 of Art. 18 of the Constitution of Ohio, gives municipalities the authority to exercise all powers of local self-government, the council had the power to enact such ordinance. He further contends that insofar as such part of Section 143.27, Revised Code, conflicts with the ordinance, such part is in conflict with Sec. 3 of Art. 18 and is therefore unconstitutional.

The fallacy of plaintiffs' contention is clearly pointed out in the leading case of *State, ex rel.* v. *Lynch*, 88 Ohio St., 71, Syl. 1,

"1. The provisions of the eighteenth article of the constitution as amended in September, 1912, continue in force the general laws for the government of cities and villages until the 15th day of November following, and thereafter until changed in one of the three modes following: (1) By the enactment of general laws for their amendment, (2) by additional laws to be ratified by the electors of the municipality to be affected thereby, (3) by the adoption of a charter by the electors of a municipality in the mode pointed out in the article."

And at page 92, the court says:

"* * * The conclusion also results from the express provision of the general schedule to the present amendments: 'All laws then in force (when the adopted amendments took effect) not inconsistent therewith shall continue in force until amended or repealed.' It follows that on the 15th of November *the government of every municipality in the state remained unchanged.*

"But the amended article authorizes the electors of a municipality to secure some immunity from the uniform government which it perpetuates as the primary status of all municipalities, and to entitle their municipality 'to exercise all powers of local self-government.' We have heard and read

much discussion of the cases upon the self-executing capacity of constitutional provisions.

"*\* \* \** This article provides two modes of securing the permitted immunity from the operation of the uniform laws which the legislature is required to pass. One of them is defined in the second section, and manifestly it is not self-executing, for it expressly authorizes the legislature to pass 'additional laws,' that is, laws additional to the general laws which the legislature is required to pass, such additional laws to become operative in a municipality only after their submission to the electors thereof and affirmance by a majority of those voting thereon. The other mode is defined in the provisions of the later sections relating to the adoption of charters. From the terms and nature of these latter provisions they are self-executing in the sense that no state legislative act is necessary to make them effective.

"A fundamental defect in the relator's case is that it assumes that a power conferred upon a municipality is conferred upon its council, although every provision of the amendment with respect to this body merely authorizes it to make provisions for ascertaining the will of the electors. No additional act of the legislature is contemplated with respect to the adoption of a charter.

"It seems, therefore, to be entirely beyond doubt that since the city of Toledo had not by a vote of its electors approved any additional law passed by the general assembly, and that its electors had not adopted a charter, the municipality and all of its departments have only such powers as were conferred by the general law; that is, such power only as it had prior to the 15th of November."

### Decisions

Prior to the case of State, ex rel. Canada, v. Phillips, **168** Ohio St., 191, the Supreme Court's decisions as to charter municipalities were in inconsistency. However, that case not only settled the law as to charter cities, but questioned certain decisions and overruled others.

But, as said in State, ex rel. Petit, v. Wagner, 170 Ohio St., 297, at 303, "This court has thus clearly recognized the distinction between the powers (home rule) of charter and noncharter municipalities." See reference to this case below.

In *Morris* v. *Roseman*, 162 Ohio St., 447, the Supreme Court again clarified this distinction between a charter and non-charter municipality. The case involved the validity of a zoning ordinance adopted by a non-charter municipality, which was at variance with the provisions of a general law of Ohio. The court says beginning at page 449:

"In the case of *Village of Perrysburg* v. *Ridgway, a Taxpayer*, 108 Ohio St., 245, 140 N. E., 595, it was held that such section 3, is self-executing, and that the power of local self-government is inherent in all municipalities regardless of enabling legislation and the existence of municipal charters.

"But how and in what manner is such power to be exercised?

"The Constitution of Ohio provides two ways. By Section 2, Article XVIII, a mandatory duty is placed upon the General Assembly to enact laws for the incorporation and government of cities and villages, and Section 7, Article XVIII, grants a municipality the option of determining its own plan of local self-government by framing and adopting a charter. *If a municipality adopts a charter it thereby and thereunder has the power to enact and enforce ordinances relating to local affairs, but, if it does not, its organization and operation are regulated by the statutory provisions covering the subject.*

"In other words, by Sections 3 and 7 of Article XVIII of the Constitution, a municipality has the power to govern itself locally in certain respects. The statutes in no way inhibit such power but merely prescribe an orderly method for the exercise of such power where the municipality has not adopted a charter and set up its own governmental machinery thereunder."

In *State, ex rel. Petit*, v. *Wagner*, 170 Ohio St., 297, the court definitely settles the question in the present case. The syllabus reads:

"A *noncharter* municipality is without authority under the provisions of Section 3, Article XVIII, Constitution, to prescribe by ordinance a method for the selection of a chief of police which is at variance with the provisions of Section 143.34, Revised Code."

That court in its opinion says:

"It is the contention of the respondents that the statute

(Section 143.34, Revised Code), does not apply because under the home-rule amendment of the Constitution the city has authority to adopt, by ordinance, regulations concerning the personnel of its police department which are at variance with statutory law.

"The respondents argue that this constitutional grant of authority is not limited in its application to charter cities, and that it applies with equal force to all municipalities in this state. With this contention we are in accord and, indeed, we have previously so held. The case of *Village of Perrysburg* v. *Ridgway, a Taxpayer*, 108 Ohio St., 245, 140 N. E., 595, establishes the right of a municipality to exercise certain powers of home rule in the absence of a charter, *but there the powers of home rule sought to be exercised were not at variance with the general law*. However, although it is always of limited persuasion to seek guidance in a case which has decided part of the whole, the circumstances of the Perrysburg decision particularly cast doubt on the validity of arguing it as authority for an extension of its own doctrine. In that case, three of the judges of this court dissented, and two of the four judges concurring in the majority opinion joined in a concurring opinion specifically reserving 'for future determination' the situation in which the municipal enactment and the general law might be at variance. Thus, far from being authority for the proposition that a noncharter municipality can adopt regulations at variance with general law, it is actually a case in which five of the seven members of the court either adopted a diametrically opposite position or explicitly emphasized the fact that they were not passing upon it. This limitation of the Perrysburg decision is pointed up in *City of Cleveland* v. *Public Utilities Commission*, 130 Ohio St., 503, 200 N. E., 765."

Ohio municipalities which have adopted charters have done so under Section 7, Article XVIII of the Constitution, which reads as follows:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this Article, exercise thereunder all powers of local self-government."

*It will be quickly noted that such section does not contain the limiting last phrase of the home-rule amendment* (Section 3, Article XVIII), *"as are not in conflict with general laws."* This omission has occasioned much judicial discussion, and, as has been recognized in such recent cases as *State, ex rel. Lynch, v. City of Cleveland,* 164 Ohio St., 437, 132 N. E. (2d), 118, and *State, ex rel. Canada* v. *Phillips, Dir.,* 168 Ohio St., 191, 151 N. E. (2d), 722, some lack of consistency has existed. As Weygandt, C. J., pointed out in the *Lynch case,* Sections 3 and 7 of Article XVIII "have been highly and often bitterly controversial even from the time they were first proposed." *The controversy concerns whether the last phrase just quoted ("as are not in conflict with general laws") modifies all that has gone before it in Section 3, or only the portion dealing with the adoption and enforcement within the municipality's limits of "local police, sanitary and other similar regulation."* It is argued that the modifying phrase applies not to this portion alone but to the opening phrase (dealing with "all powers of local self-government") as well because the framers of the Constitution knowingly refused to separate the phrases designating the two classifications of functions by a comma (2 Ohio Constitutional Convention, Proceedings and Debates (1912), 1860 to 1861). *While the insertion of the comma would have been proof positive of an intent to have the modifier apply to the second phrase only, the converse does not necessarily follow, and this court has chosen to read the section as it would have had a comma been inserted after the word, "self-government." This is the clear effect of the Lynch and Canada cases, supra.*

Indeed, any other interpretation of Section 3 would render the adoption of Section 7 senseless, because its grant of authority for municipal charter operation is specifically "subject to the provisions of Section 3." *If full home-rule authority were intended to have been created by Section 3, the adoption of Section 7 could only be considered as a vain and superfluous act.* Such a conclusion would be completely lacking in justification, and was expressly denied in the *Canada case, supra,* paragraph four of the syllabus of which reads as follows:

"4. The words 'as are not in conflict with general laws' found in Section 3 of Article XVIII of the Constitution, modify

the words 'local police, sanitary and other similar regulations' but do not modify the words 'powers of local self-government.' "

The respondents cite a number of decisions of this court as authority for their position, but, with the exception of the *Perrysburg case, all the cases relied upon by them were concerned with charter municipalities and thus presented a different problem.*

Section 2 specifically authorizes "general laws * * * to provide for the * * * government of" municipalities. It is apparent therefore that, by what they said, the people expressed an intention that, *in the absence of the adoption of a charter pursuant to Section 7 or of the adoption of any "additional laws * * * for the government of municipalities adopting the same" pursuant to Section 2, the "general laws * * * for * * * government of" municipalities authorized by Section 2 were to control a municipality in the exercise of the powers of local self-government conferred upon it by Section 3.*

*This court has thus clearly recognized the distinction between the powers of charter and noncharter municipalities.*

By these two sections, the Constitution confers upon *charter cities and villages some greater degree of power* not here required to be defined *but limits the general area of noncharter municipal authority.*

There is no question but that the ordinance in question would have been valid if the City of Canton had been a charter city and had the subject ordinance been authorized by such charter. *State, ex rel.* v. *Wagner, supra,* at page 302.

From these decisions this Court finds the law clearly to be that in the absence of the adoption of a charter pursuant to Sec. 7, Art. XVIII, Constitution, or of the adoption of any additional laws for the government of municipalities adopting the same pursuant to Sec. 2, then the general laws for the government of municipalities authorized by Sec. 2, absolutely control a municipality in the exercise of the powers of local self-government conferred by Sec. 3. In short, the organization and operation of a noncharter municipality are regulated by the statutory provisions covering the subject.

Hence, if any ordinance of a noncharter city is in conflict or at variance with the statutory provisions or general laws of the State, such ordinance is invalid and ineffective.

This Court therefore judges, declares and decrees that Section 997 of the Code of the City of Canton, 1950, conflicts and is at variance with the provisions of Section 143.27, Revised Code, which are to the effect that the tenure of every employee in the classified service of a city shall be during good behavior and efficient service, and is therefore invalid and unenforceable.

The remaining issues are thereby moot and the prayer for a permanent injunction is denied.

Defendants furnish entry.